FILED IN OPEN COURT
2-3-16
TIMOTHY M OBRIEN, CLERK
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| **Plaintiff,** | |
| **v.** | Case No. 15-40030-CM |
| JOHN T. BOOKER, Jr., a/k/a "Mohammed Abdullah Hassan," | |
| **Defendant.** | |

## PLEA AGREEMENT PURSUANT TO FEDERAL RULE
## OF CRIMINAL PROCEDURE 11(c)(1)(C)

The United States of America, by and through Anthony W. Mattivi and David C. Smith, Assistant United States Attorneys, and Josh Parecki and Rebecca Magnone, Trial Attorneys, DOJ Counterterrorism Section, and John T. Booker, Jr., the defendant, personally and by and through his counsel, Kirk Redmond and Melody J. Evans, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1.     **Defendant's Guilty Plea.**  The defendant agrees to plead guilty to Counts 1 and 2 of the Indictment, and to stipulate to the application of United States Sentencing Guideline section 3A1.4 (the "Terrorism Enhancement").  Count 1 of the Indictment charges a violation of 18 U.S.C. § 2332a(a)(2)(D), that is, Attempted Use of a Weapon of Mass Destruction.  Count 2 of the Indictment charges a violation of 18 U.S.C. § 844(f)(1), that is, Attempted Destruction of Government Property by Fire or Explosion.  By entering into this Plea Agreement, the defendant admits to knowingly committing these offenses, and to being guilty of the offenses.  The defendant understands the maximum sentence that may be imposed as to Count 1 of the Indictment is life imprisonment, a $250,000 fine, a term of life on supervised release, and a $100 mandatory special assessment.  The defendant understands the maximum sentence that may be

imposed as to Count 2 of the Indictment is imprisonment for not less than five years nor more than 20 years, a $250,000 fine, supervised release for three years, and a $100 mandatory special assessment.

   2.   **Factual Basis for the Guilty Plea.**  The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

> In March 2014, the Federal Bureau of Investigation (FBI) received a citizen complaint that the defendant had posted on Facebook that he intended to commit jihad and that he was not scared to die.  Agents were able to identify the defendant through publically accessible content on his Facebook page, and they contacted and interviewed him.  During the interview the defendant admitted that he had enlisted in the United States Army with the intent to commit an insider attack against American soldiers like the attack committed by Major Nidal Hassan at Fort Hood, Texas.  The defendant stated that if sent overseas and told to kill a fellow Muslim, he would rather turn around and shoot the person giving orders.  The defendant stated that he formulated several plans for committing jihad once enlisted, including firing at other soldiers while at basic training at the firing range or while at his pre-deployment military base after completing his initial military training.  The defendant clarified that he did not intend to kill "privates," but that he instead wanted to target someone with power.  The defendant also said that he did not intend to use large guns, but instead a small gun or a sword.  The defendant was subsequently denied entry into the military.

> Beginning in October 2014, the defendant began communicating with an individual who, unbeknownst to him, was an FBI Confidential Human Source (CHS 1).   The defendant repeatedly expressed to CHS 1 his desire to engage in violent jihad on behalf of ISIL.[1]  The defendant told CHS 1 that he dreamt of being a fighter in the Middle East.  He told CHS 1 that he had heard about Americans joining ISIL and that he wanted to join, but he didn't know anyone who could help him do so.  During another conversation, the defendant showed CHS 1 a video about suicide bombers and stated that was how he wished to die.  During a conversation about specific plots in which the defendant could engage, the defendant proposed that he could either kill soldiers at a local base or he could kidnap a high-ranking military officer and force him to make a video saying that ISIL is inside the United States.  The defendant later proposed filming a video for public release in which he would announce that he would target American soldiers in the streets and "pick[] them off one by one," and immediately after filming the video he proposed to capture and kill an American soldier.

---

[1] The Islamic State of Iraq and the Levant ("ISIL") has been designated by the United States Secretary of State as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

In March 2015, CHS 1 introduced the defendant to another FBI Confidential Human Source (CHS 2), whom the defendant was told would assist with the defendant's plans to commit an attack. The defendant told CHS 1 and CHS 2 that he had studied suicide bombing and was inspired by an American brother who he believed delivered a suicide bomb to a military base in Syria. The defendant told CHS 1 and CHS 2 that he believed ISIL wanted to bring the fight back to Iraq, and that the way to make that happen is to provoke the enemy at home so they (meaning the United States) will have to send soldiers back into Iraq. The defendant said the best way to do that is to hit the Army here (in the United States) so that Americans know the battle is not just overseas. The defendant told CHS 2 that he had been watching a video of an American Syrian suicide bomber he called "Jihadi Joe." He said he wanted to build and detonate a truck bomb like Jihad Joe[2] did. The defendant told CHS 2 that detonating a suicide bomb is his number one aspiration because he couldn't be captured, all evidence would be destroyed, and he would be guaranteed to hit his target. CHS 2 asked the defendant if he had a target in mind, and the defendant said he knew of a military post in Manhattan, Kansas called "the Big Red One" (referring to Fort Riley). The defendant suggested this post would be a good target because the post is famous and there are a lot of soldiers stationed there.

On March 10, 2015, the defendant, CHS 1 and CHS 2 traveled together to Freedom Park near Marshall Army Airfield at Fort Riley, where CHS 2 took a video of the defendant delivering an ISIL message that the defendant had written. The defendant opened his speech with a statement in Arabic and then switched to English. He pledged his allegiance to Abu Bakr al Baghdadi, whom he knew to be the leader of ISIL, and he encouraged all Muslims watching the video to give allegiance to al Baghdadi and to support al Baghdadi and ISIL however they could. The defendant then stated that ISIL would like to send a message:

> to all the mothers, daughters, fathers, brothers, sisters and friends or loved ones of . . . any soldier in the United States military. Get your kids out. Get your loved ones out of the military. Because, wallahi, [ISIL] is coming for them. From inside, whether it be in their homes, whether it be on a base like this, whether it be in the recruiting stations, whether it be in the streets . . . Wallahi, we are coming for them and we seek their blood because their blood is halal  for us to kill them.

During late March 2015, CHS 1 told the defendant that he had been "selected" to accompany the defendant on his suicide mission. The two then traveled to several different retail stores to purchase components to assist in assembly of an improvised explosive device (IED). These components were stored in a storage unit the defendant had rented in Topeka for this very purpose. During the process

---

[2] In July of 2014, in a video posted to social media, a 22 year-old American citizen Monar Mohammad Abu-Salha-nicknamed "Jihad Joe," narrated a video in an effort to recruit westerners to join the Mujahedeen fighting in Syria. After making the video, Abu-Salha appears to drive a suicide truck bomb, containing 16 tons of explosives, into a Syrian army stronghold.

of purchasing and storing components for the IED, the defendant told CHS 1 that
he wanted to be the one to "push the switch" (meaning to detonate the IED).

On March 26, 2015, the defendant met with both CHS 1 and CHS 2 to gather
information about military targets in the area. The defendant told CHS 1 and
CHS 2 that they needed to detonate the IED somewhere that would really hurt
(the military). The defendant said he wanted to see the fear in the eyes of the
"kuffar" (the non-believers) as he pushed the button and they ran for their lives.
The defendant identified primary and secondary routes to travel from Topeka to
Fort Riley, as well as several locations and access gates near the southeast corner
of Fort Riley that he believed would be worthwhile targets.

On April 8, 2015, the defendant and CHS 1 removed from the storage unit the
items they had purchased to construct the IED. They transported the components
to a second storage unit where CHS 2 was waiting. The second storage unit held
a large amount of what the defendant believed was explosive material (in reality
this was inert material provided by the FBI) to be used to assemble the vehicle-
borne IED (VBIED). The defendant then used a marker to circle three potential
target buildings on a map of Fort Riley, and he drew arrows depicting the
potential routes that he and CHS 1 could take through the base to the buildings
that he had marked.

That same day, the defendant also made a second video inside the storage unit, in
front of the stack of (inert) explosive materials, to complement his earlier video
filmed near Fort Riley. In the video, the defendant stated, among other things:

> Today, Insh'allah (essentially "God willing"), we are going to
> build this bomb with 1,000 pounds of ammonium nitrate.
> Insh'allah, this will kill many kuffar. This message is to you
> America. You sit in your homes and you think that this war is just
> over in Iraq . . . Wallahi, we today we will bring the Islamic State
> straight to your doorstep. You think this is just a game, wallahi
> when this bomb blows up and kills as many kuffar as possible,
> maybe then you'll realize it.

On April 10, 2015, the defendant and CHS 1 drove to a location near Junction
City, Kansas where they met CHS 2. CHS 2 met the defendant and CHS 1 in the
van in which CHS 2 had purportedly constructed the VBIED. CHS 2 explained
the function of the inert VBIED to the defendant and demonstrated how to arm
the device. CHS 1 and the defendant then drove the VBIED to an area near Fort
Riley that the defendant believed to be a little-used utility gate that would allow
them to enter Fort Riley undetected so they could find an area to detonate the
VBIED that would kill as many soldiers as possible. While the defendant was
making final connections to arm the inert VBIED at the gate, he was taken into
custody without incident by members of the FBI.

4

3.    **Proposed (c)(1)(C) Sentence.**  The parties propose, as an appropriate disposition of the case:

(a)    360 months in prison on Count One (18 U.S.C. § 2332a(a)(3));

(b)    240 months in prison on Count Two (18 U.S.C. § 844(f)(1)), concurrent with Count 1;

(c)    lifetime supervised release on Count One;

(d)    three years supervised release on Count Two, concurrent with Count One;

(e)    no fine or restitution; and

(f)    a mandatory special assessment of $200.

The parties seek this binding Plea Agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a).  If the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this Plea Agreement.  This Plea Agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4.    **Application of the Sentencing Guidelines.**  The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines.  Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.    **Government's Agreements.**  In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees to request, at the time of sentencing, that the Court dismiss the remaining counts of the Indictment, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment.

6.    **Consequences for Violating Plea Agreement.**  The United States' obligations under this Plea Agreement are contingent upon defendant continuing to manifest an acceptance of responsibility.  If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, this Plea Agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings.  The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule

of Evidence 401, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

7.     **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.**  The Court has no obligation to accept the proposed Plea Agreement and sentence.  It is solely within the Court's discretion whether to accept the proposed binding Plea Agreement as an appropriate disposition of the case.

8.     **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.**  On the other hand, if the Court agrees to be bound by the proposed Plea Agreement and accepts the defendant's guilty plea, the defendant will not be permitted to withdraw his guilty plea.  Only if the Court rejects the proposed Plea Agreement will the defendant be permitted to withdraw his guilty plea.

9.     **Payment of Special Assessment.**  The defendant understands that a mandatory special assessment of $100 per count of conviction will be entered against him at the time of sentencing.  The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing.  The defendant has the burden of establishing an inability to pay the required special assessment.  The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

10.    **Waiver of Appeal and Collateral Attack.**  The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release.  The defendant is aware that 18 U.S.C. § 3742 affords him the

right to appeal the conviction and sentence imposed.  By entering into this agreement, the

defendant knowingly waives any right to appeal a sentence imposed in accordance with the

sentence recommended by the parties under Rule 11(c)(1)(C).  The defendant also waives any

right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to

modify or change his sentence, in any collateral attack, including, but not limited to, a motion

brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d

1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b).

In other words, the defendant waives the right to appeal the sentence imposed in this case, except

to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the

parties under Rule 11(c)(1)(C).  However, if the United States exercises its right to appeal the

sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this

waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a).

Notwithstanding the forgoing waivers, the parties understand that the defendant in no way

waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial

misconduct.

      11.    **FOIA and Privacy Act Waiver.**  The defendant waives all rights, whether

asserted directly or by a representative, to request or receive from any department or agency of

the United States any records pertaining to the investigation or prosecution of this case,

including, without limitation, any records that may be sought under the Freedom of Information

Act, 5 U.S.C. § 552.  The defendant further waives any rights conferred under the Privacy Act of

1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to

this case.

      12.    **Full Disclosure by United States.**  The defendant understands the United States

will provide to the Court and the United States Probation Office all information it deems relevant

8

to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

13.     **Parties to the Agreement.**  The defendant understands this Plea Agreement binds only him and the United States Attorney's for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

14.     **No Other Agreements.**  The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and that this Plea Agreement embodies each and every term of the agreement between the parties.

9

15.     The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty.  He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.


Anthony W. Mattivi
Assistant United States Attorney

Date: 03 FEB 16


David C. Smith
Assistant United States Attorney

Date: 3 FEB 16


Josh Parecki
Trial Attorney, DOJ Counterterrorism Section

Date: 03 FEB 16


Rebecca Magnone
Trial Attorney, DOJ Counterterrorism Section

Date: 03 FEB 16


Jared Maag
Criminal Chief/Supervisor

Date: 1-11-16


John T. Booker, Jr.
Defendant

Date: 2/3/16


Melody J. Evans
Federal Public Defender
Counsel for Defendant

Date: 2-3-16


Kirk Redmond
Assistant Federal Public Defender
Counsel for Defendant

Date: 2-3-16