10:24:11   1

2                    UNITED STATES DISTRICT COURT
                        DISTRICT OF KANSAS
3
    UNITED STATES OF AMERICA,        Docket No.15-40030-CM
4
       Plaintiff,                    Kansas City, Kansas
5                                    Date: 5/13/16
         v.
6
    JOHN T BOOKER,
7
       Defendant.
8    ...................

9                            TRANSCRIPT OF
                             STATUS HEARING
10            BEFORE THE HONORABLE CARLOS MURGUIA,
                  UNITED STATES DISTRICT JUDGE.
11
    APPEARANCES:
12
    For the Plaintiff:    Anthony Mattivi
13                        Asst. US Attorney
                          444 SE 6th Avenue
14                        Room 290
                          Topeka, KS  66683
15
    For the Defendant:    Kirk Redmond & Melody Brannon
16                        Asst. Federal Public Defender &
                          Federal Public Defender
17                        425 S Kansas Avenue
                          Room 205
18                        Topeka, KS  66603

19   Court Reporter:      Nancy Moroney Wiss, CSR, RMR, FCRR
                          Official Court Reporter
20                        558 US Courthouse
                          500 State Avenue
21                        Kansas City, KS  66101

22   Proceedings recorded by machine shorthand, transcript
     produced by computer-aided transcription.
23

24

25

10:42:31  1        THE COURT:  Thank you for being present.  I
10:42:34  2   heard counsel wanted to talk to the court prior to us
10:42:38  3   going on the record, is that correct?
10:42:45  4        MS. BRANNON:  Not necessarily before we go
10:42:47  5   on the record.  We were hoping we could do the
10:42:50  6   equivalent of approaching the bench.  We have some
10:42:50  7   rather sensitive information.
10:42:56  8        THE COURT:  The other thing I would note is
10:42:58  9   that Mr. Booker is not in the courtroom.  For these type
10:43:03 10   of hearings, I would actually ask that he be brought
10:43:07 11   into the courtroom.  So, we'll have the marshals bring
10:43:11 12   him in.
10:46:00 13        (Defendant entered courtroom.)
10:46:05 14        THE COURT:  Thank you.  Let the record show
10:48:17 15   we're here regarding Case Number 15-40030.  It's a case
10:48:23 16   entitled United States of America versus John T Booker.
10:48:27 17   The parties please enter their appearance.
10:48:29 18        MR. MATTIVI:  Good morning, Your Honor.
10:48:34 19   Tony Mattivi for the government.
10:48:35 20        MS. BRANNON:  Your Honor, Mr. Booker is
10:48:37 21   present in person, and through counsel Melody Brannon
10:48:39 22   and Kirk Redmond.
10:48:41 23        THE COURT:  Thank you.  Mr. Booker, we're
10:48:43 24   here at the request of your attorneys to take up a
10:48:45 25   matter that they wanted to present to the court.

| | | |
|---|---|---|
| 10:48:50 | 1 | Miss Brannon? |
| 10:48:52 | 2 | MS. BRANNON:  Yes, Your Honor.  And Your |
| 10:48:55 | 3 | Honor, can we approach? |
| 10:48:57 | 4 | THE COURT:  The best method is to actually |
| 10:49:00 | 5 | go to the podium.  Thank you. |
| 10:49:04 | 6 | MS. BRANNON:  Thank you, Judge.  We had |
| 10:49:08 | 7 | asked the court to consider a substitution of counsel in |
| 10:49:10 | 8 | this case.  It's probably an unfamiliar procedure for |
| 10:49:16 | 9 | doing this, but we have a couple of reasons for this. |
| 10:49:19 | 10 | Within the last two or three weeks, we have developed a |
| 10:49:24 | 11 | potential conflict in this case with Mr. Booker.  We're |
| 10:49:28 | 12 | trying to get out ahead of that.  It's not an active |
| 10:49:32 | 13 | conflict or an actual conflict as we stand before the |
| 10:49:35 | 14 | court, but it is certainly headed that direction.  For |
| 10:49:37 | 15 | that reason, we are asking the court to -- you know, |
| 10:49:41 | 16 | we're trying to keep this track on -- case on track. |
| 10:49:43 | 17 | We're certainly in the home stretch.  We've been |
| 10:49:46 | 18 | discussing this with Mr. Mattivi and Mr. Smith.  We |
| 10:49:50 | 19 | tried to put as many of the pieces in place for the |
| 10:49:52 | 20 | court before we approached the court, and we've all |
| 10:49:58 | 21 | ready, as you know, contacted other counsel and |
| 10:50:00 | 22 | discussed the matter with him.  And so, that is what we |
| 10:50:06 | 23 | can present to the court right now. |
| 10:50:08 | 24 | THE COURT:  Okay.  I thought at one time, I |
| 10:50:11 | 25 | may have understood, that counsel was going to request a |

10:50:16  1  side bar, a bench conference during these proceedings.

10:50:20  2  Is that still being requested or not?

10:50:23  3          MS. BRANNON:  If the court needs more

10:50:25  4  information or has questions beyond this, I think we

10:50:28  5  would certainly need to do that.  But you know, if the

10:50:31  6  court is in a position to -- to address our request just

10:50:37  7  based on our representation that we believe we have a

10:50:39  8  potential conflict, I think that's all we would need.

10:50:44  9          THE COURT:  I may ask some more questions in

10:50:46  10  regards to that.  So, at this time, what we do, since we

10:50:51  11  are set up through video conference, instead of having

10:50:55  12  -- being able to have counsel come up to the side of our

10:50:59  13  bench here, what we've done in the past is actually have

10:51:03  14  people leave the courtroom until this part of the

10:51:07  15  hearing is concluded, at which point we'll call everyone

10:51:11  16  back into the courtroom.  So, at this time, we are going

10:51:14  17  to ask if there's people in the courtroom that are not

10:51:17  18  court personnel or counsel, that they leave and just

10:51:22  19  wait outside the courtroom until called back in.  Thank

10:51:26  20  you.

10:51:29  21          MS. BRANNON:  Your Honor, we have one other

10:51:30  22  attorney, a new attorney from our office that we'd like

10:51:33  23  to stay in the courtroom.  He's not at counsel table.

10:51:36  24          THE COURT:  That's allowable.  Thank you.

10:51:54  25  In regards to this, I don't want to go into great

10:51:58   1   detail, but in terms of the timing of when this became

10:52:02   2   apparent, and more specifically, the type of conflict,

10:52:09   3   either through other cases or through individuals, or

10:52:14   4   something of that nature, please.

10:52:16   5           MS. BRANNON:  Certainly, Your Honor.  This

10:52:19   6   really came -- excuse me -- to fruition about the first

10:52:23   7   week of March.  It's not a matter that existed at the

10:52:27   8   time of the plea.  It is not a matter of conflict with

10:52:30   9   other cases or with other clients.  It has to do with

10:52:34   10  the attorney/client relationship with Mr. Booker, and

10:52:38   11  some things that have developed there that are

10:52:42   12  interfering or distracting enough that we think he would

10:52:44   13  be better off with new counsel who can address some of

10:52:48   14  his issues, and would hopefully keep this case on track.

10:52:54   15  And as I said, when we talked to Mr. Booker, he did not

10:52:58   16  have an objection to this particular proceeding.  So, we

10:53:06   17  have discussed it with him and what we're proposing to

10:53:10   18  the court.

10:53:10   19          THE COURT:  Mr. Booker?  Did you hear what

10:53:14   20  your attorney, Miss Brannon, said right now?

10:53:18   21          THE DEFENDANT:  Yes, I heard what she said.

10:53:20   22          THE COURT:  Mr. Redmond, can you move that

10:53:22   23  microphone?  I don't know if there's a microphone closer

10:53:24   24  to Mr. Booker, please.

10:53:27   25          THE DEFENDANT:  I heard what she said.

10:53:29  1      THE COURT:  Yeah, and in that regard,

10:53:31  2  they're asking that the court appoint -- they mentioned

10:53:35  3  it's a substitute, but appoint another attorney for you

10:53:38  4  regarding representing you in this case, and

10:53:41  5  Miss Brannon set out the reasons why they're doing that.

10:53:45  6  Did you understand that?

10:53:48  7      THE DEFENDANT:  I understand.  I still

10:53:53  8  understand the full situation and can't grasp it.

10:53:55  9      THE COURT:  Are you in agreement with the

10:53:56  10  court granting the request to have a different attorney

10:53:59  11  represent you?

10:54:01  12      THE DEFENDANT:  Yeah.

10:54:04  13      THE COURT:  Has anyone forced you into doing

10:54:05  14  that?  We're having trouble hearing what you're saying,

10:54:13  15  Mr. Booker, so let me re-ask these questions.

10:54:17  16      THE DEFENDANT:  There's no -- there's no --

10:54:18  17  I said I did not -- when she asked me, she had said that

10:54:21  18  I did not object to it and that they talked to me

10:54:24  19  before.  This is not true.  They talked to me, but I did

10:54:27  20  object to it.

10:54:31  21      THE COURT:  Okay.  Let me make sure I'm

10:54:33  22  clear, because again, I didn't hear you clearly.  I'll

10:54:36  23  tell you what, it's easier if you come up to the podium.

10:54:39  24  Why don't you come up to the podium.  That microphone's

10:54:41  25  better.  Please.  Thank you.  Again, Miss Brannon

| | | |
|---|---|---|
| 10:54:54 | 1 | appears here telling the court that because of this |
| 10:54:58 | 2 | conflict, they do not believe they're able to continue |
| 10:55:02 | 3 | to represent you in this case.  Was that talked -- were |
| 10:55:07 | 4 | you -- did you have a discussion with your attorney |
| 10:55:09 | 5 | before then regarding that? |
| 10:55:11 | 6 | THE DEFENDANT:  We discussed it, but when |
| 10:55:15 | 7 | she said that I objected to it, that's not true. |
| 10:55:18 | 8 | THE COURT:  Okay. |
| 10:55:19 | 9 | THE DEFENDANT:  Or she said that I didn't |
| 10:55:22 | 10 | object to it.  That's not true.  I object to it. |
| 10:55:24 | 11 | THE COURT:  Okay.  So, why are you objecting |
| 10:55:25 | 12 | to their request to have a different attorney represent |
| 10:55:29 | 13 | you? |
| 10:55:30 | 14 | THE DEFENDANT:  Well, honestly, Judge, you |
| 10:55:36 | 15 | got my previous letters, right? |
| 10:55:39 | 16 | THE COURT:  Yeah, but the question is, why |
| 10:55:42 | 17 | are you objecting to a different attorney, because |
| 10:55:46 | 18 | through your letters, you know, which we told you have |
| 10:55:50 | 19 | to come through your attorney, you seem to have maybe |
| 10:55:52 | 20 | some concerns about them representing you.  But why are |
| 10:55:58 | 21 | you -- what's that? |
| 10:56:00 | 22 | THE DEFENDANT:  I said I agree, Your Honor. |
| 10:56:04 | 23 | THE COURT:  So, why are you objecting to a |
| 10:56:05 | 24 | different attorney representing you? |
| 10:56:07 | 25 | THE DEFENDANT:  Because I feel like, you |

10:56:09  1  know, what's been happening lately, the full situation
10:56:12  2  hasn't come to fruition yet.  I mean, the full situation
10:56:14  3  hasn't been explained in the court and to the public
10:56:18  4  what's really going on, because what's really going on
10:56:20  5  is a lot more deeper than saying I'm wrong, they're
10:56:24  6  wrong.  What I'm saying is I feel like they're taking a
10:56:27  7  problem and running away with it, and they think it's
10:56:30  8  going to be solved by them running away with it.
10:56:34  9  There's so much things that's happened.  They just put
10:56:42 10  me in seg for three weeks.  On April 6th --
10:56:43 11          THE COURT:  Mr. Booker, Mr Booker,
10:56:45 12  Mr. Booker, we can't write down what you're saying
10:56:48 13  because you're speaking too fast.  So, you're going to
10:56:51 14  have to slow down.
10:56:54 15          THE DEFENDANT:  I said they threw me in seg
10:56:57 16  for -- segregation for three weeks.  I called up Melody
10:57:01 17  Brannon Evans on April 6th around 11:32 PM.  Two hours
10:57:04 18  -- approximately an hour later, I was escorted by a
10:57:07 19  corrections officer with pepper spray saying that I was
10:57:11 20  put in marshal hold through my lawyer for three weeks
10:57:14 21  with no phone calls, no visits, no --
10:57:17 22          THE COURT:  You need to slow down.
10:57:21 23  Mr. Booker, you need to slow down.  Slow down, 'cause we
10:57:24 24  can't take down what you're saying.  You have to -- you
10:57:27 25  have to speak slower.

| | |
|---|---|
| 10:57:29 | **1** |
| 10:57:35 | **2** |
| 10:57:43 | **3** |
| 10:57:48 | **4** |
| 10:57:53 | **5** |
| 10:57:56 | **6** |
| 10:57:59 | **7** |
| 10:58:04 | **8** |
| 10:58:06 | **9** |
| 10:58:09 | **10** |
| 10:58:12 | **11** |
| 10:58:17 | **12** |
| 10:58:22 | **13** |
| 10:58:24 | **14** |
| 10:58:28 | **15** |
| 10:58:31 | **16** |
| 10:58:34 | **17** |
| 10:58:36 | **18** |
| 10:58:39 | **19** |
| 10:58:42 | **20** |
| 10:58:44 | **21** |
| 10:58:47 | **22** |
| 10:58:49 | **23** |
| 10:58:51 | **24** |
| 10:58:52 | **25** |

          THE DEFENDANT:  I said that approximately April 6th, 11:32 PM, I was escorted.  I called Melody Brannon Evans to speak to her about something, and -- and I informed her about my so-called attorney which discussed about my case on the 2nd.  I came here on the 2nd.  I leave.  Two -- approximately two hours after that, which I was told that I would be visiting on Friday, approximately two hours after that, I was escorted by corrections officer out of my room saying that I had marshal hold with me -- on me, by my attorneys for three weeks straight 'til I believe -- can't remember -- 22 days later, I talked to the warden through the marshals, and I was able to get out of the segregation.  I got out.  An hour later, I was placed back in segregation for the same -- for -- by my attorneys.  Now before, I was told I had been situated about a conflict.  My question is, if they had a conflict with me, what's the new -- what's the new problem?  You know, I want to know the full situation, you know.  And also, I don't want to -- there's nothing -- I'm not trying to hide the situation.  I'm not trying to hide the situation, because there's a lot of things that we can investigate about the situation that both parties will be in trouble for.

          THE COURT:  Okay.  All right.  Thank you.

10:58:54   **1**         THE DEFENDANT:  I feel like they're running

10:58:56   **2**  away from the problem.

10:58:57   **3**         THE COURT:  Thank you.  You can return to

10:58:59   **4**  the table.  Thank you.

10:59:02   **5**         MS. BRANNON:  Judge, if I may.  I'm focused

10:59:06   **6**  to the date.  We've been dealing with this about --

10:59:08   **7**  about a month, five weeks or so.  So, I said March, and

10:59:14   **8**  I believe it was April this sort of came to light.

10:59:18   **9**         THE COURT:  Based on what the court has been

10:59:20  **10**  told, counsel, I'm going to bring this up in a different

10:59:23  **11**  manner with you, and I appreciate that counsel notified

10:59:29  **12**  the court in regards to an issue regarding the federal

10:59:35  **13**  public defender's office continuing to represent

10:59:38  **14**  Mr. Booker, specifically, Miss Brannon, you and

10:59:42  **15**  Mr. Redmond.  The -- the manner in which that was

10:59:47  **16**  relayed to us is fine.  I would tell you, though, that

10:59:52  **17**  our general policy here, although the local rules do

10:59:55  **18**  allow for substitution of counsel, is that in this

11:00:00  **19**  particular case, with these circumstances where we have

11:00:04  **20**  a defendant who has appointed counsel, what we generally

11:00:09  **21**  have counsel do is actually either file or make an oral

11:00:14  **22**  motion to withdraw, and the court would consider what's

11:00:19  **23**  now transpired to be your oral motion to withdraw based

11:00:23  **24**  on the conflict.  And again, what we generally do would

11:00:30  **25**  then -- if the court were to grant the motion, find that

11:00:35  1  the indigent defendant, in this case, Mr. Booker, should

11:00:39  2  at this point then have a different appointed counsel.

11:00:44  3  Now, I know what's been communicated or related to the

11:00:46  4  court is that Mr. Thomason had been contacted about

11:00:52  5  substitute counsel.  Again, that information was

11:00:56  6  received.  There's nothing wrong with that having been

11:00:59  7  relayed to the court.  The court at this time, though,

11:01:02  8  would consider its normal procedure, which would be to

11:01:06  9  contact the CJA coordinator/administrator, and tell her

11:01:12  10 that we now need another different appointed counsel.  I

11:01:18  11 don't know her system.  I don't know.  The procedure

11:01:21  12 would follow, if it is Mr. Thomason who's next on her

11:01:24  13 list, then that's who it is, but procedurally, that's

11:01:27  14 what the court is going to find should take place,

11:01:32  15 unless you have any comments or objections to that.

11:01:37  16        MS. BRANNON:  Your Honor, I will inform the

11:01:41  17 court that we have involved Laura Shaneyfelt in this

11:01:47  18 process.  We have consulted with Mr. Mattivi about

11:01:49  19 certain counsel.  Our only concern was whoever is next

11:01:53  20 on the rotation, because this is a sensitive and

11:01:57  21 difficult case, Mr. Thomason has in other cases followed

11:02:06  22 us on rather difficult cases and difficult clients, and

11:02:09  23 that was the only reason we had proposed him, but I did

11:02:12  24 want the court to know that we had all ready consulted

11:02:14  25 with the CJA administrator.

| | | |
|---|---|---|
| 11:02:16 | 1 | THE COURT:  Thank you.  What I'll do at this |
| 11:02:18 | 2 | time -- |
| 11:02:18 | 3 | MS. BRANNON:  It was our proposal.  I'm |
| 11:02:21 | 4 | sorry, the name was our proposal.  It came from us. |
| 11:02:23 | 5 | THE COURT:  Again, what I would do is just |
| 11:02:25 | 6 | refer to her, and let her do whatever she normally does |
| 11:02:28 | 7 | in the normal course of procedures there in regards to |
| 11:02:32 | 8 | new appointment of counsel.  Unless you have anything |
| 11:02:36 | 9 | else that we need to take up here at the bench from |
| 11:02:39 | 10 | either you or Mr. Mattivi, then I would ask that whoever |
| 11:02:44 | 11 | was asked to leave the courtroom be allowed to return at |
| 11:02:47 | 12 | this time. |
| 11:02:50 | 13 | MS. BRANNON:  And would you like us to go |
| 11:02:51 | 14 | ahead and make an oral motion to withdraw at that time? |
| 11:02:54 | 15 | THE COURT:  Yes.  So, we'll go ahead and |
| 11:02:58 | 16 | call -- Mr. Mattivi, unless you have some other reason |
| 11:03:01 | 17 | we shouldn't bring people back into the courtroom? |
| 11:03:03 | 18 | MR. MATTIVI:  I don't, Judge.  Thank you. |
| 11:03:05 | 19 | THE COURT:  Okay. |
| 11:03:07 | 20 | (People returned back to the courtroom.) |
| 11:03:33 | 21 | THE COURT:  If we have everybody back in the |
| 11:03:36 | 22 | courtroom that was asked to leave or even other |
| 11:03:39 | 23 | individuals, again, the court appreciates the fact that |
| 11:03:41 | 24 | you were able to accommodate the court's request. |
| 11:03:45 | 25 | Again, generally what we would do, if we were all |

11:03:49   1   present in the same courtroom, is that we would have

11:03:53   2   conducted this side bar at the side of the bench, and we

11:03:58   3   would have put on the artificial noise to take up

11:04:01   4   these -- these issues that were for the court to hear.

11:04:05   5   So, that's why we cleared the courtroom.  We have, in

11:04:09   6   fact, now concluded that part, and so, now we're back

11:04:12   7   again here in the open court on the record, and at this

11:04:16   8   time, the court is going to ask Miss Brannon to

11:04:19   9   continue.

11:04:20   10          MS. BRANNON:  Your Honor, at this time, the

11:04:23   11   federal public defender's office would ask the court to

11:04:26   12   allow us to withdraw as counsel for Mr. Booker, and ask

11:04:29   13   the court to consider appointing new counsel on his

11:04:32   14   behalf.

11:04:33   15          THE COURT:  At this time --

11:04:34   16          MS. BRANNON:  We base this request -- I'm

11:04:37   17   sorry.

11:04:37   18          THE COURT:  Go ahead.

11:04:38   19          MS. BRANNON:  I was just going to say for

11:04:40   20   the record, we base this request on a conflict that has

11:04:43   21   developed within the attorney/client relationship.

11:04:47   22   That's all we have, Your Honor.

11:04:48   23          THE COURT:  Unless there's anything else, at

11:04:51   24   this time, the court is going to find that there does

11:04:55   25   appear to be an apparent conflict of interest, as well

| | | |
|---|---|---|
| 11:05:01 | 1 | as the court would find that there has developed |
| 11:05:06 | 2 | interference of the attorney/client relationship and |
| 11:05:12 | 3 | interruptions that at this point is not allowing |
| 11:05:16 | 4 | Mr. Booker to receive the representation that he |
| 11:05:21 | 5 | deserves.  So, based on that, the court does find |
| 11:05:26 | 6 | there's good cause, that this line of communication has |
| 11:05:28 | 7 | been irretrievably broken, that there's not a feeling |
| 11:05:34 | 8 | that -- at least, I'm sure, Mr. Booker, on your part, |
| 11:05:38 | 9 | that you would feel comfortable, or you would trust your |
| 11:05:42 | 10 | present attorneys to continue representing you.  So, in |
| 11:05:45 | 11 | that regard, Mr. Booker, the court is going to find that |
| 11:05:47 | 12 | a different attorney should be appointed to represent |
| 11:05:50 | 13 | you.  So, with this new attorney, Mr. Booker, if you |
| 11:05:56 | 14 | have anything that you want your new attorney to review |
| 11:06:01 | 15 | or bring up, then your new attorney knows, they're a |
| 11:06:05 | 16 | legally trained attorney, so they know the law, they |
| 11:06:09 | 17 | know how to file things on your behalf, and that's who |
| 11:06:13 | 18 | you will now speak to.  So, the court makes that |
| 11:06:17 | 19 | finding, and grants an oral motion to withdraw by the |
| 11:06:21 | 20 | federal public defender's office, again, for good cause. |
| 11:06:26 | 21 | Anything else?  Anything else from the government? |
| 11:06:29 | 22 | MR. MATTIVI:  Nothing further from the |
| 11:06:33 | 23 | government, Your Honor.  Thank you. |
| 11:06:34 | 24 | THE COURT:  If there's nothing else, |
| 11:06:35 | 25 | Mr. Booker, you'll be contacted by your new attorney, |

| | |
|---|---|
| 11:06:38 | 1 |
| 11:06:42 | 2 |
| 11:06:46 | 3 |
| 11:06:50 | 4 |
| 11:06:53 | 5 |

1   and then again, if there's anything that needs to take

2   place, your new attorney knows how to file things or

3   contact the court on your behalf.  This hearing's

4   adjourned.  Thank you.

5                   (Whereupon, court recessed proceedings.)

```
1
2                        C E R T I F I C A T E
3
4
5        I, Nancy Moroney Wiss, a Certified Shorthand Reporter
6    and the regularly appointed, qualified and acting
7    official reporter of the United States District Court
8    for the District of Kansas, do hereby certify that as
9    such official reporter, I was present at and reported in
10   machine shorthand the above and foregoing proceedings.
11       I further certify that the foregoing transcript,
12   consisting of 16 typewritten pages, is a full, true, and
13   correct reproduction of my shorthand notes as reflected
14   by this transcript.
15       SIGNED July 20, 2016.
16
17                    S/_____
18                    Nancy Moroney Wiss, CSR, CM, FCRR
19
20
21
22
23
24
25
```